IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FIRST MERCURY INSURANCE CO.,<br>    *Plaintiff*,<br><br>v.<br><br>THE EARLEIGH HEIGHTS VOLUNTEER FIRE COMPANY OF ANNE ARUNDEL COUNTY,<br>    *Defendant*. | Civil Action No. ELH-14-3156 |

## MEMORANDUM OPINION

This declaratory judgment case was initiated by First Mercury Insurance Co. ("Mercury" or "Insurer") against the Earleigh Heights Volunteer Fire Company of Anne Arundel County ("Fire Company"). It presents a question of insurance coverage and is related to a tort action pending in the Circuit Court for Anne Arundel County ("Tort Action"), as well as a declaratory judgment action filed by the Fire Company in the same Maryland court (the "State Declaratory Action").

The Tort Action involves a suit filed in May 2013 by Sean Snyder and Joseph Micciche, Jr., individually and as Personal Representative of the Estate of Kara Richelle Micciche and to the use of Kimberly Micciche,[1] against, *inter alia*, Frank Joseph & Sons, Inc. d/b/a Jolly Shows ("Jolly" or "Jolly Shows") and the Fire Company. *See Micciche, et al. v. Goldman*, 02-C-13-178420 (Cir. Ct. for Anne Arundel Cnty.). The Tort Action is rooted in a tragic accident that occurred on July 12, 2011, in which Kara Micciche was fatally injured and Sean Snyder was seriously injured when they were struck by a motor vehicle while crossing Ritchie Highway. The vehicle was driven by William Goldman. The complaint in the Tort Action (ECF 1-1, "State

---

[1] Joseph and Kimberly Micciche are the parents of the decedent, Kara Micciche.

Complaint") alleges, *inter alia*, that Jolly and the Fire Company were negligent in failing to secure safe crossing at a roadway adjacent to a carnival sponsored by the Fire Company and operated by Jolly. The decedent and Snyder, who were pedestrians, were heading to the carnival when the accident occurred. *See* State Complaint ¶¶ 29, 30, 35.

In November 2013, under a general liability policy issued by the Insurer to Jolly, the Insurer undertook defense of Jolly, as an insured, and of the Fire Company, as an additional insured. *See* ECF 1 ("Complaint") ¶ 19. In July 2014, plaintiffs in the Tort Action voluntarily dismissed their claims against Jolly. *Id.* ¶ 11; ECF 1-2 (stipulation of dismissal). Thereafter, in August 2014, the Fire Company voluntarily dismissed its cross-claim in the Tort Action against Jolly. Complaint ¶ 12; ECF 1-3 (stipulation of dismissal). Soon after, Mercury ceased defending Jolly and the Fire Company. Complaint ¶ 24. When the Fire Company disputed the Insurer's right to withdraw the Fire Company's defense, the Insurer filed this action, seeking a declaratory judgment that it has no duty to defend or indemnify the Fire Company. *Id.* ¶¶ 28, 32.

Before me now is the Fire Company's "Motion to Dismiss" (ECF 7, "Motion"), filed pursuant to Fed. R. Civ. P. 12(b)(6), with an accompanying memorandum of law (ECF 7-1, "Memo"). The Fire Company argues that the federal declaratory action should be litigated in the Maryland court, where a parallel suit filed by the Fire Company, seeking declaratory judgment on the same issue, is currently pending. Memo at 6-8. Mercury has opposed the Motion. ECF 8 ("Opposition"). The Insurer argues that it is entitled to its forum of choice; that Maryland has no strong interest in deciding the coverage question; and that the coverage issue is separable from the tort claims in the Tort Action. Opposition at 5, 22. The Fire Company has replied. ECF 12 ("Reply").

The Motion is fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will grant the Motion.

## Factual Background

The basic facts appear to be undisputed.  *Compare* Memo at 2-4 *with* Opposition at 5-8 *and* Complaint.  As discussed, this case is related to the Tort Action now pending in a Maryland trial court, as well as to the State Declaratory Action.  Trial of the Tort Action is scheduled to commence on April 14, 2015.  As noted, the Insurer, the plaintiff in this federal action, came to be involved by way of an insurance contract between Jolly and the Insurer.

The Insurer issued Jolly a general liability policy (the "Policy"), effective from April 18, 2011 to April 11, 2012.  Complaint ¶ 13.  The Policy contains an "additional insured" provision, which amends the Policy to include "additional insureds", which are individually defined as follows, *id.* ¶ 14 (quoting Policy) (alterations in Complaint):

> any person or organization for whom you [*i.e.*, Jolly Shows] are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability arising out of your ongoing operations performed for that insured.

The operation of the carnival at issue in the Tort Action was indeed governed by an agreement between Jolly and the Fire Company.  Complaint ¶ 15.  The Insurer appears to agree that the agreement obligated Jolly to name the Fire Company as an additional insured under the Policy.  The agreement stated, *id.* ¶ 17 (quoting agreement) (alterations in Complaint):

> The Lessor [*i.e.*, Jolly Shows] maintains for its protection, at it's [sic] own expense, workmen's compensation insurance, general liability insurance, and auto liability insurance.  The Lessor will name the Lessee [*i.e.*, Earleigh Heights] and any property owners as additional insured on the general liability insurance policy.

As noted, in May 2013 plaintiffs in the Tort Action filed suit in State court against, *inter alia*, Jolly and the Fire Company. State Complaint. "Pursuant to the 'additional insured' endorsement and the agreement between" Jolly and the Fire Company, on November 4, 2013, the Insurer "accepted the tender of defense" from the Fire Company "under a full reservation of [the Insurer's] rights under" the Policy. Complaint ¶ 19. By August 2014, all claims against Jolly in the Tort Action had been voluntarily dismissed. *See* Complaint ¶ 24; ECF 1-2, ECF 1-3 (stipulations of dismissal).

Mercury sent a letter to the Fire Company on September 5, 2014, stating that it believed that, "in light of the dismissal" of Jolly, "the remaining claims against [the Fire Company] did not arise out of" Jolly's operations, and that the Insurer, therefore, "no longer had a duty to defend" the Fire Company. Complaint ¶¶ 24, 25. Further, the Insurer stated that it would continue to cover the fees of the attorney it had provided to the Fire Company, Christopher R. Dunn, for an additional 30 days, *i.e.* until October 5, 2014, "'to help facilitate any transition of the defense.'" *Id.* ¶¶ 25, 27 (quoting letter).

The Fire Company disputed the Insurer's right to withdraw its defense, "contending that there is a potentiality of coverage and therefore a duty to defend on the part of" the Insurer. *Id*. ¶ 28; Memo at 4. Nonetheless, the Insurer withdrew its defense of the Fire Company. *See Micciche*, *supra* (the Tort Action) (docket showing only Hamilton Fisk Tyler as counsel for the Fire Company); Memo at 6 ("The issue of whether [the] … Fire Company is owed a defense has essentially been rendered moot by the timing … of [the Insurer] in withdrawing the defense … . Undersigned counsel [Hamilton F. Tyler] is defending [the] … Fire Company in the [Underlying Action]."). Moreover, as discussed in more detail, *infra*, it appears the Fire Company is not

asking the Insurer to renew its defense of the Fire Company before resolution of the Tort Action, which is set for trial beginning April 14, 2015.

The Insurer filed this lawsuit on October 7, 2014, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332, and seeking only a declaratory judgment, pursuant to 28 U.S.C. § 2201.  ECF 1.  On October 20, 2014, with the consent of the Insurer, the Fire Company filed a motion for extension of time to answer (ECF 5), seeking an extension until November 14, 2014.  This Court granted the request.  ECF 6.  Then, on November 5, 2014, the Fire Company filed the State Declaratory Action in the Circuit Court for Anne Arundel County.  *See Earleigh Heights Volunteer Fire Company of Anne Arundel Cnty. v. First Mercury Insur. Co.*, Case No. C-02-CV-14-000308 (Cir. Ct. for Anne Arundel Cnty.); Memo at 1-2.  That action appears to be nearly a mirror image of this one.

Neither side has submitted a copy of the complaint in the State Declaratory Action.  However, it appears that, as plaintiff in the State Declaratory Action, the Fire Company seeks a declaration that the insurance policy issued by the Insurer to Jolly covers claims asserted by plaintiffs in the Tort Action against the Fire Company, or, in the alternative, that the Insurer has a duty to indemnify the Fire Company "for any and all claims" in the Tort Action.  Memo at 4. The Fire Company argues, ECF 7-1 at 10, and the docket sheet for the State Declaratory Action shows, that more parties are involved in that case.  *See* Docket, *Earleigh Heights Volunteer Fire Company of Anne Arundel Cnty.*, *supra*, *publicly available at* http://casesearch.courts.state.md.us/.  There, the Fire Company has named as defendants Jolly as well as four other parties from the Tort Action.  *Id.*

The Fire Company explains here that it filed a motion in the State Declaratory Action to consolidate that case with the Tort Action, Memo at 2, and that it requested a stay of the State

Declaratory Action pending resolution of the Tort Action. *Id*. at 5. The docket of the Tort Action reflects that a motion to consolidate with the State Declaratory Action was filed on November 13, 2014. *See Micciche*, *supra*. As of the date of this Memorandum, a motion to stay does not yet appear on the docket of either state action. *Id*; *Earleigh Heights Volunteer Fire Company of Anne Arundel Cnty.*, *supra*.

On November 13, 2014, the Fire Company filed the pending Motion. ECF 7.

## Discussion

### A.

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Nevertheless, when, as here, jurisdiction is established, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *accord Lexmark Int'l, Inc. v. Static Control Components, Inc.*, --- U.S. ---, 134 S. Ct. 1377, 1386 (Mar. 25 2014); *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 206 (4th Cir. 2000). Although the Supreme Court has identified some situations in which, for reasons of comity, federalism, or other prudential concerns, federal courts may abstain from exercising jurisdiction, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River*, 424 U.S. at 813.

In *Colorado River*, the Supreme Court held that, when there are "parallel federal and state suits" but no "traditional grounds for abstention" apply, a stringent "exceptional circumstances" standard ordinarily governs a federal court's decision whether to abstain from exercising jurisdiction. *Chase Brexton Heath Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005) (analyzing *Colorado River*). In other words, even where there is parallel state and federal

litigation, "'[a]bdication of the obligation to decide cases'" is justified only in "'exceptional circumstances.'" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14 (1983) (citations and some internal quotation marks omitted).

However, as the Supreme Court reaffirmed in *Wilton v. Seven Falls. Co.*, 515 U.S. 277, 286 (1995), district courts have "greater discretion" to abstain from exercising jurisdiction "in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone*." In other words, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their discretion yields to considerations of practicality and wise judicial administration." *Id.* at 288. This is because the Declaratory Judgment Act, 28 U.S.C. § 2201(a), which is the source of a federal court's authority to issue declaratory judgments, has been understood, "[s]ince its inception," to "confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286 (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)).

Indeed, the Declaratory Judgment Act contains a "textual commitment to discretion": it provides that a court "'*may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Wilton*, 515 U.S. at 286 (quoting 28 U.S.C. § 2201(a)) (emphasis in *Wilton*); *see also United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Thus, of import here, when a federal suit seeks only discretionary declaratory relief, and there is another proceeding regarding the same issues pending in state court, "a district court may either stay the suit in favor of state court action or 'decline to exercise jurisdiction altogether by . . . dismissing the suit or,'" when the case has been removed from a state tribunal, by "'remanding it to state court.'" *Myles Lumber Co. v. CNA Fin. Corp.*, 233 F.3d 821, 823 (4th Cir. 2000) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996)).

Defendant's Motion invokes this inherent discretion of a federal court to abstain from entertaining a declaratory action, which is often referred to as *Wilton/Brillhart* abstention or *Wilton* abstention.  In general, the Fourth Circuit has long maintained that "'a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004) (quoting *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996), in turn quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)) (alteration in *Coffey*).  However, "[w]hen a related state court proceeding is pending," such as the State Declaratory Action, "'considerations of federalism, efficiency, and comity' should inform the district court's decision whether to exercise discretion over a declaratory judgment action." *Coffey*, 368 F.3d at 412 (citations and some internal quotation marks omitted).

In a number of cases decided in the wake of *Wilton*, the Fourth Circuit has elucidated and applied several factors to guide district courts in the exercise of their discretion whether to abstain from issuing a declaratory judgment. *See*, *e.g.*, *Gross*, *supra*, 468 F.3d 199; *New Wellington Fin. Corp. v. Flagship Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005); *Coffey*, *supra*, 368 F.3d 409; *Myles Lumber*, *supra*, 233 F.3d 821; *Kapiloff*, *supra*, 155 F.3d 488; *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419 (4th Cir. 1998).  The factors are often called the "*Kapiloff* factors" or the "*Ind-Com* factors," deriving from the cases decided soon after *Wilton*.[2]

---

[2] Several of the factors articulated in *Kapiloff* and *Ind-Com* were drawn from an earlier case, *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994).  Although both *Kapiloff* and *Ind-Com* drew from *Nautilus*, the Fourth Circuit has recognized that one aspect of *Nautilus* was overruled by the Supreme Court in *Wilton*: the *Nautilus* Court had balanced the factors itself, applying an "essentially 'de novo'" standard of review to the district court's decision to abstain from exercising jurisdiction over a declaratory action. *Nautilus*, 15 F.3d at

In *Kapiloff*, 155 F.3d at 493-94 (citations omitted), the Fourth Circuit said:

> [D]istrict courts are not without guidance in exercising [their] discretion. We have explained that a declaratory judgment "is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" At the same time, whenever a parallel proceeding is pending in state court, district courts must also take into account "considerations of federalism, efficiency, and comity." To aid district courts in balancing the state and federal interests when a parallel state action is pending, we have articulated four factors for consideration: (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

In balancing the factors, "'[t]he existence or nonexistence of a state court action is simply one consideration relevant to whether to grant declaratory relief.'" *Ind-Com*, 139 F.3d at 423 (citation omitted). And, "[a]s with any multi-factor test governing the exercise of federal jurisdiction, a district court should not treat the factors as a 'mechanical checklist,' but rather should apply them flexibly in light of the particular circumstances of each case." *VRCompliance, LLC v. HomeAway, Inc.*, 715 F.3d 570, 573 (4th Cir. 2013).

B.

On balance, consideration of the *Kapiloff* factors directs dismissal of this case in favor of permitting the litigation to proceed in state court. I will review each factor in turn.

1.

---

375 (citation omitted). However, the Supreme Court held in *Wilton* that such a decision must be reviewed only "for abuse of discretion." *Wilton*, 515 U.S. at 290; *see Poston*, *supra*, 88 F.3d at 257 (reaffirming use of factors articulated in *Nautilus*, but stating: "To whatever extent our previous decisions have implied further constraints on district court discretion [to abstain from exercising jurisdiction over a declaratory action], *see*, *e.g.*, *Nautilus*, . . . those decisions must give way to the clear teachings of *Wilton*.").

The first factor is "whether the state has a strong interest in having the issues decided in its courts." *Kapiloff*, 155 F.3d at 493-94.

As an initial matter, both sides appear to agree that Maryland law governs the insurance coverage question. *See* Memo at 8; Opposition at 10-11; *see also Brillhart*, 316 U.S. at 496 ("Whether and under what circumstances a reinsurer can be reached through a judgment against the insured are questions of local law.").

Consequently, the Fire Company asserts that "'there exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case.'" Memo at 8 (quoting *Mitcheson v. Harris*, 955 F.2d 235, 237 (4th Cir. 1992)). The Insurer counters that, although "the insurance coverage issues here do involve state law, federal courts frequently interpret insurance contracts and determine coverage issues." Opposition at 10. It relies on *Kapiloff* for the proposition that state interests are "'not particularly significant'" when the state law issues are "standard matters of agency and contract interpretation." Opposition at 8 (quoting *Kapiloff*, 155 F.3d at 494).

In my view, the Insurer has the better argument. Certainly, Maryland has an interest in having Maryland law adjudicated in a Maryland court. And, as the Fire Company points out, the action "involves conduct occurring in Maryland which allegedly caused damages to Maryland residents." Memo at 8; *see also* Reply at 3. But, the Fire Company does not argue that the legal issues presented are other than "standard matters." *See* Memo at 8-9; *see also*, *e.g.*, *Moscarillo v. Prof. Risk Mgmt. Servs., Inc.*, 398 Md. 529, 537, 921 A.2d 245, 249 (2007) ("This Court has, on numerous occasions, discussed the duty of an insurer to provide a defense for an insured.").

In *Nautilus*, *supra*, 15 F.3d at 378 (citing *Mitcheson*, 955 F.2d at 236, 240), the Fourth Circuit said that, in order for a state's interest to "weigh against the exercise of federal

jurisdiction," the questions of law raised must be "difficult" or "unsettled"; that is, they should involve more than "the routine application of settled principles of law to particular disputed facts." *See also Kapiloff*, 155 F.3d at 494; *Poston*, 88 F.3d at 258; *Hartford Cas. Insur. Co. v. Wugin*, 247 F. Supp. 2d 723, 727 (D. Md. 2003) (interest factor favors neither side where state law issue not novel). Accordingly, I cannot say that Maryland's interest weighs against the exercise of federal jurisdiction.

2.

The second factor is "whether the state courts could resolve the issues more efficiently than the federal courts." *Kapiloff*, 155 F.3d at 494. As I see it, this factor weighs heavily in favor of dismissing the Complaint so that the entire matter may be resolved in a single court.

The rationale was well put by the Fourth Circuit in *Mitcheson*, 955 F.2d at 239:

> It hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks. The inefficiencies that could result are not hard to imagine. For example, … a federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action. *See Indemnity Ins. Co. v. Schriefer*, 142 F.2d 851, 853 (4th Cir. 1944) (approving dismissal of declaratory action because duty to indemnify could be decided as well after the state court litigation). Such potential problems reinforce the inherent appeal of having all litigation stemming from a single controversy resolved in a single court system. … While inefficiencies can of course occur within a single court system, the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof. Because the principal litigation … is non-removable, the Maryland courts are the only system with the jurisdictional power to resolve all facets of this controversy, and they are also in the best position to assess how best to handle any satellite suits.

Here, as in *Mitcheson*, this case and the state cases, as discussed *infra*, concern overlapping issues. And, "a federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action," 955 F.2d at 239, as the Fire Company repeatedly stresses in its Memo, at 5-6, 9.

Moreover, as in *Mitcheson*, the Tort Action is non-removable,[3] meaning that only the Maryland courts can resolve "all facets of this controversy" and "assess how best to handle any satellite suits." 955 F.2d at 239.

This analysis is strengthened by the Fire Company's assertion that it will seek *only* indemnification, and that it would do so only *after* resolution of the Tort Action, and only if there is a judgment against it. As noted, the Tort Action is scheduled for trial in early April 2015, in the Circuit Court for Anne Arundel County. Memo at 5; *Micciche*, *supra*. In its Memo, the Fire Company argues: "The issue of whether [the] … Fire Company is owed a defense has essentially been rendered moot by the timing … of [the Insurer] in withdrawing the defense," because it is "doubtful that a resolution of the instant case … would occur in sufficient time prior to the jury trial in the [Tort Action] to permit a change in counsel." Memo at 6. And, in any event, the Fire Company has indicated it does not seek a change in counsel. Rather, it seeks to stay the State Declaratory Action until resolution of the Tort Action. Memo at 5. Consequently, it argues, if the Fire Company "prevails at trial in the [Tort Action], the declaratory judgment coverage issues will be moot." Memo at 5; *see also* Reply at 2, 4.

Although no one can say with certainty if the trial of the Tort Action will occur in early April, or whether the state court will indeed stay the State Declaratory Action, or whether schedule changes would affect the Fire Company's intentions, these uncertainties only weigh heavier still in favor of permitting the litigation to go forward "within a single court system." A

[3] The statutory window for removal of the Tort Action has long since passed. *See* 28 U.S.C. § 1446(b). But, it appears that the Tort Action could not have been removed even immediately after filing. With certain exceptions not present here, actions "removable solely on the basis of jurisdiction under section 1332(a)" cannot be removed from state court if any of the parties "properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Because there do not appear to be any federal questions in the Tort Action, *see* ECF 1-1 (complaint in Tort Action alleging two counts in common law tort), and because, *inter alia*, the Fire Company is a citizen of Maryland, Complaint ¶ 4, the Tort Action could not have been removed to this Court.

single court with a view of all competing claims and their progress is best positioned to determine how to resolve the controversy fairly and efficiently. *See Wilton*, 515 U.S. at 289 ("We believe it more consistent with the statute to vest district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp."); *AMEX Assur. Co. v. Giordano*, 925 F. Supp. 2d 733, 745 (D. Md. 2013) (quoting *Brillhart*, 316 U.S. at 495) (alterations in *AMEX*) ("In evaluating … efficiency concerns, courts focus on 'whether the questions in controversy between the parties to the federal suit ... can better be settled in the [pending state] proceeding.'").

Accordingly, I conclude that the state court is in a better position than the federal court to resolve efficiently the issues in controversy here.

3.

The third factor is "whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts." *Kapiloff*, 155 F.3d at 494. This factor also weighs in favor of dismissing the action.

"The concern about entanglement turns on what preclusive effect the declaratory judgment action will have on the state action." *Hartford Cas. Ins. Co.*, 247 F. Supp. 2d at 727 (citing *Mitcheson*, 955 F.2d at 239-40); *see also Kapiloff,* 155 F.3d at 494 ("[S]ince both actions raised the same core issues of law and fact, and both actions aimed at determining the rights of the parties under the insurance policy, potential entanglement between the state and federal courts was a genuine possibility.").

In its Opposition, the Insurer dedicates more argument to this factor than to any other. *See* Opposition at 12-19. However, the Insurer's argument focuses only on the potential for

entanglement with the Tort Action; it completely ignores the potential for entanglement with the State Declaratory Action. In sum, the Insurer concludes, Opposition at 19 (emphasis added):

> The issue to be determined in this declaratory judgment action is independent and separable from the issues for trial *in the tort action*. Therefore, there is *no possibility* that this Court's exercise of its jurisdiction would create any unnecessary 'entanglement' between the state and federal courts, and no grounds for abstention.

As discussed, the State Declaratory Action essentially presents a mirror-image of the claims in this action.[4] Thus, both this Court and the Circuit Court for Anne Arundel County have been asked to decide the exact same issues between the Insurer and the Fire Company. If this case were to proceed, this case and the State Declaratory Action would simply become a race between the two courts to see which tribunal resolves the issues first, thereby achieving claim preclusive effect. Accordingly, "there is a clear threat of unnecessary entanglement between the state and federal courts in this case … ." *The Ohio Cas. Ins. Co. v. Williams*, 09-CV-00513, 2010 WL 274233, at *4 (M.D.N.C. Jan. 15, 2010) (considering potential entanglement between declaratory judgment action brought by insurer in federal court and declaratory judgment action brought by insured in state court).

4.

The fourth factor is "whether the federal action is mere 'procedural fencing,' in the sense that the action is merely the product of forum-shopping." *Kapiloff*, 155 F.3d at 494. This factor also weighs in favor of dismissing the action.

---

[4] In its Memo, the Fire Company argues that there are "additional parties" in the State Declaratory Action and therefore "the absence of interested parties in the instant action creates … 'entanglement' … ." Memo at 10. As discussed, in that action, the Fire Company has named five additional parties as defendants. However, the Fire Company has not explained why these are interested parties, or why they are named in the complaint. Consequently, I cannot meaningfully consider this argument on the information before me.

Each party accuses the other of forum shopping. The Fire Company argues, Memo at 11:

> First Mercury Insurance Company filed the Federal Declaratory Judgment Action in anticipation of a claim being asserted against it should the Circuit Court for Anne Arundel County enter judgment in favor of the Plaintiffs in the [Tort Action]. If there is a Plaintiffs' verdict, both Earleigh Heights Volunteer Fire Company and the Plaintiffs would look to the policy issued by First Mercury Insurance Company to satisfy the judgment. However, First Mercury Insurance Company apparently does not wish to have the coverage issues litigated in the Circuit Court for Anne Arundel County as it apparently believes this Court is a more favorable forum for it.

The Fire Company further argues, correctly, that declaratory judgment actions "are disfavored when they are filed in anticipation of another lawsuit in order to obtain a more favorable forum or procedural posture," as in this case. Memo at 10 (citing, *e.g.*, *Quarles*, 92 F.2d at 324; *Myles Lumber Co.*, 233 F.3d at 824); *see also* Reply at 7.

The Insurer responds, Opposition at 19 (emphasis in original):

> [*A*]*fter* First Mercury had already filed this action, Earleigh Heights sought and received an extension of time to respond to the complaint, but used that opportunity to file its *subsequent* state court coverage action, which it has apparently not served on First Mercury and intends to have stayed. First Mercury's complaint cannot be considered an 'anticipatory filing' as never, prior to its filing of the instant motion, did Earleigh Heights provide any indication to First Mercury that it intended to file a parallel state court action.

The Insurer puts much emphasis on the fact that it filed this action before the Fire Company filed the State Declaratory Action. However, that fact does not control. In both *Brillhart* and *Wilton*, the insurers filed for declaratory judgment first in the federal court, and the insureds subsequently haled the insurers into state court. *Brillhart*, 316 U.S. at 493 (after federal action filed, insurer named reinsurer as defendant in action already pending in state court); *Wilton*, 515 U.S. at 280 (after federal action filed, insured filed new action in state court, naming insurer as defendant). And, in both cases, the Supreme Court upheld the district courts'

decisions to dismiss or stay the cases, emphasizing the primacy of entanglement concerns and efficiency.  316 U.S. at 496-96; 515 U.S. at 283, 288.

Additionally, in *VRCompliance, LLC*, *supra*, 715 F.3d at 574, the Fourth Circuit said: "In general, where two parallel suits are pending in state and federal court, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action.'" (Quoting *Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 n.2 (4th Cir. 1974)); *see also Poston*, 88 F.3d at 258 ("[A]lthough the federal action was filed first, we decline to place undue significance on the race to the courthouse door, particularly in this instance where [the Insurer] had constructive notice of [the defendants'] intent to sue … ."). Here, as discussed in relation to the second *Kapiloff* factor, the "balance of convenience" certainly tips in favor of the second, state-court action.

Moreover, it seems unlikely that the Insurer "never" had "any indication" that the Fire Company might hale it into state court. Even assuming that the Fire Company never expressly said it would do so, the Tort Action had been pending in state court for more than seventeen months before the Insurer filed this declaratory action, as the Fire Company points out. Memo at 12. The Insurer has known almost all along — at least since the Fire Company tendered its defense, sometime before November 2013, Complaint ¶¶ 18, 19 — that the Fire Company believes the Insurer may be liable for its defense and/or losses.  The Fire Company expressly reaffirmed that belief when it disputed the Insurer's right to withdraw defense in the wake of Jolly's dismissal from the case.  *See* Complaint ¶ 28.  And, presumably the Insurer anticipates some future formal claim from the Fire Company — otherwise, why would it have filed this case at all?

Accordingly, it appears that the Insurer has filed this action in order to avoid being haled into state court, which can only be called "forum-shopping." *See*, *e.g.*, *Wilton*, 515 U.S. at 280 ("The District Court observed the state lawsuit … encompassed the same coverage issues raised in the declaratory judgment action and determined a stay warranted in order to avoid piecemeal litigation and to bar [the insurer's] attempts at forum shopping.").

## Conclusion

For the foregoing reasons, I will grant defendant's Motion (ECF 7) and dismiss the Complaint, without prejudice. A separate Order follows, consistent with the Memorandum Opinion.

Date: December 19, 2014                             /s/
                                                   Ellen Lipton Hollander
                                                   United States District Judge